AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED
*November 25, 2020*
David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| GUS ANGELO VASQUEZ | ) Case No. | **4:20mj2398** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 24, 2020__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC sec 841(a)(1) and 841(b)(1)(A)(viii) | Possession with the intent to distribute a controlled substance, namely, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers. |
| 18 USC 922(g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:
See affidavit

☑ Continued on the attached sheet.

*Richard J. Walsh*
Complainant's signature

DEA SA RICHARD WALSH
Printed name and title

Signed November 26, 2020.

Judge's signature

Sworn to before me telephonically

Date: 11/25/2020

City and state: Houston, Texas

Honorable Sam S. Sheldon, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF
## THE CRIMINAL COMPLAINTS

I, Richard J. Walsh, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of criminal complaints of the following four individuals: KENDAL ALEJANDRO MONZON ("MONZON"), GUS ANGELO VASQUEZ ("VASQUEZ"), RUBEN LOPEZ ("LOPEZ"), and KARINA AYALA ("AYALA").

2. Based on the information contained herein, I believe there is probable cause to criminally charge MONZON with violating 21 U.S.C. sec. 841(a)(1) and (b)(1)(A)(viiii), namely possession with the intent to distribute a controlled substance, namely, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

3. In addition, based on the information contained herein, I believe there is probable cause to criminally charge VASQUEZ with violating 18 U.S.C. sec. 922(g)(1), namely, being a felon in possession of a firearm, as well as 21 U.S.C. sec. 841(a)(1) and (b)(1)(A)(viiii), namely possession with the intent to distribute a controlled substance, namely, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers.

4. In addition, based on the information contained herein, I believe there is probable cause to charge LOPEZ with violating 18 U.S.C. sec. 922(g)(1), namely, being a felon in possession of a firearm, as well as 21 U.S.C. sec. 841(a)(1) and (b)(1)(A)(viiii)

1

and 846, namely possession with the intent to distribute a controlled substance, namely, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, and conspiracy to do the same, as well as 21 U.S.C. sec. 841(a)(1) and (b)(3) and 846, namely, possession with the intent to distribute a schedule V controlled substance, namely codeine with promethazine, and conspiracy to do the same.

5. In addition, based on the information contained herein, I believe there is probable cause to criminally charge AYALA with violating 21 U.S.C. sec. 841(a)(1) and (b)(1)(A)(viiii) and 846, namely possession with the intent to distribute a controlled substance, namely, 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, and conspiracy to do the same, as well as 21 U.S.C. sec. 841(a)(1) and (b)(3) and 846, namely, possession with the intent to distribute a schedule V controlled substance, namely codeine with promethazine, and conspiracy to do the same.

6. I am a Special Agent with the Drug Enforcement Administration, and have been since October of 2000. Since that time, and as part of my official duties, I have participated in investigations of drug trafficking, money laundering, complex conspiracies, and have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Previously, from 1996 through October of 2000, I was a Border Patrol Agent at Chula Vista, California in

the San Diego Sector. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their operations, including but not limited to, their methods of importing and distributing controlled substances, use of telecommunication devices to include cellular telephones and digital display paging devices, use of counter surveillance techniques, and use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.  I am also certified to conduct field testing of substances believed to be controlled substances under federal law (and all field testing identified herein was conducted by similarly qualified individuals) and am experienced in determining firearms' place of manufacture.

7.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8.  Unless otherwise stated herein, all events described in this affidavit occurred within the Southern District of Texas.  Likewise, unless otherwise stated herein, all firearms identified in this affidavit were manufactured outside of the State of Texas based on the company manufacturing the firearms and information contained on the firearms themselves regarding where they were made.

9.  According to the records of the Clerk of the Harris County Court, on February 20, 2009, VASQUEZ was convicted in that Court of Felony Unlawful Carrying of a Weapon on a Licensed Liquor Premises and sentenced to two years of imprisonment. In addition, on February 20, 2009, VASQUEZ was convicted in that Court of Felony

Possession of Cocaine Between 1 and 4 grams and sentenced to two years of imprisonment. In addition, on April 12, 2011, VASQUEZ was convicted in that Court of Felony Possession of Cocaine and sentenced to two years of imprisonment.

10. Also, according to the records of the Clerk of the Harris County Court, on March 11, 2016, LOPEZ was convicted in that Court of Felony Aggravated Assault with a Deadly Weapon and sentenced to two years of imprisonment.

11. On November 24th, 2020, Officers with the Houston Police Department observed a silver Toyota Highlander bearing plate NWN1138 parked at 4439 Yupon Ridge Drive, Houston TX. Officer Lagunas of the Houston Police Department observed the Toyota Highlander back out of the location and leave.

12. HPD Officer C.A. Goodrich then followed this vehicle and observed the vehicle fail to come to a complete stop at the stop sign at Oakcenter and Boone Road. Officer Goodrich also observed this vehicle fail to use a turn signal when turning south on Boone Road. Based on these traffic violations, HPD Officers Terrell and Officer Mathis then initiated a traffic stop on the Toyota Highlander at 11200 Beechnut with their emergency lights and sirens.

13. Officers Terrell and Mathis indicated that the Toyota Highlander was refusing to stop and fleeing away from officers at a high rate of speed. Officer Mathis and Terrell were operating a clearly marked City of Houston Patrol Vehicle and wearing their issued City of Houston Police Officer uniform. Officers chased the Toyota Highlander for approximately ten minutes with the speeds reaching upwards of 90 miles per hour on residential streets. The driver of the Highlander,

4

who would later be identified as MONZON, continued to erratically drive and run multiple red lights and stop signs. MONZON eventually crashed his vehicle into a patrol car drive by HPD Officer Champagne at 11800 Alief Clodine Road. Officers then took Monzon into custody. The vehicle was inoperable.

14. After the accident, Officer Avila then searched the vehicle and found a large plastic tub with 15 cylinders that are wrapped in plastic wrapping. Officer Avila observed that these cylinders contained what appeared to be methamphetamine. Each cylinder weighed approximately 1100 grams. In total approximately 17,234 grams of methamphetamine were recovered.

15. Based on my training and experience, the cylinders appeared to contain methamphetamines. Moreover, the contents of the cylinders field tested positive for methamphetamines.

16 On Tuesday, November 24, 2020, HPD Officers J. Avila and Goodrich were in the vicinity of 4439 Yupon Ridge Drive and observing that location. Also, in the vicinity was HPD Officer J. Lagunas, who observed a small white 4 door vehicle (TX LP: KMS-3652) arrive at that location. Officer Lagunas then observed an individual later identified as VASQUEZ, park in the driveway and knock on the front door. Moments later, Officer Lagunas observed the garage door open and VASQUEZ drive the aforementioned vehicle inside the garage and then close the garage door. Approximately 20-25 minutes later, Officer Lagunas observed the garage door open and observed VASQUEZ driving the same vehicle leave the target residence.

5

17. Officer Goodrich then observed VASQUEZ traveling westbound at approximately the 11400 block of Bandlon Drive, when Officer Goodrich observed VASQUEZ fail to come to a complete stop at the stop sign at the intersection of Bandlon Drive and Bugle Road.

18. Based on this traffic violation, HPD Officers Pinchoff and Trang attempted to initiate a traffic stop in a HPD marked patrol vehicle, at approximately the 7300 block of Belle Park Drive. Upon attempting to stop VASQUEZ, VASQUEZ began to evade uniformed officers in marked vehicles in his (VASQUEZ's) vehicle. The pursuit then last approximately 10 minutes through west Houston. VASQUEZ ran multiple lights/intersections at high rates of speeds. VASQUEZ ultimately crashed his vehicle into the fence of a private residence located at 11611 High Star Drive.

19. At this time, VASQUEZ was taken into custody without incident. Upon taking suspect VASQUEZ into custody, Officers recovered a semi-auto pistol that fell out of VASQUEZ's pant leg and 1.7 gm of crack cocaine found inside his right front pocket. Upon searching the vehicle VASQUEZ was operating, Officers observed in plain view in the back seat, multiple (15-20) black cylinders wrapped in black bags, which, based on their training and experience, was consistent with how illegal controlled substances are packaged for sale. Further, this was consistent with the same package that was found in MONZON's vehicle as mentioned in paragraph 14. HPD Officer T. Snell then arrived on scene a checked the vehicle for the odor of narcotics with his K9 partner "Ricky Bobby." Officer Snell then informed other

officers that Ricky Bobby alerted for the odor of narcotics inside VASQUEZ's vehicle.

20. Upon searching the vehicle officers recovered approximately 117.2 kilograms of a substance that, based on my training and experience, appeared to be methamphetamines (it was later field tested and came back as positive for methamphetamines) in the back seat and trunk of vehicle inside a storage container. Officers also recovered approximately 2.7 kilograms of a substance that, based on my training and experience, appeared to be cocaine (it was later field tested and came back positive for cocaine) inside a storage container as well as a trash bag containing three book ledgers and approximately $520.00.

21. After these two incidents, at 4439 Yupon Ridge Drive, Houston, Harris County, Texas, 77072, HPD Officer Lagunas Officer Lagunas observed a gray Nissan Quest bearing Texas license plate CN6D213 pull into the driveway at that location. LOPEZ, was observed exiting from the driver's seat and walking to the front door of the location. After knocking on the front door and meeting with an unknown person, LOPEZ walked back to the driveway and waited for the garage door to open. Once the garage door opened, Officers observed LOPEZ carry a black safe to the van and placed it inside. Officer Lagunas observed a woman, later identified as AYALA, who is the wife of MONZON, and an unknown third person then come out of the garage. AYALA was observed struggling to carry a black duffle bag to the van and placed it inside. LOPEZ continued to load boxes inside of the van.

22. Once the items were loaded into the van, Officers observed LOPEZ and AYALA attempt to completely shut the garage but were unable to and left it slightly ajar on the bottom. LOPEZ then got into the driver's seat of the aforementioned vehicle and AYALA got into the front passenger seat. The unknown individual also got into the vehicle. Officer Goodrich observed the Nissan Quest van fail to come to a complete stop at the stop sign at the intersection of the 4400 block of Yupon Ridge Drive and the 11300 block of Bandlon Drive. The vehicle then failed to use turn signal, turning west bound on the 11300 block of Bandlon Drive. The vehicle then failed to come to a complete stop at the stop sign at the 11300 block of Bugle Road and the 11300 block of Bandlon Drive. An HPD marked patrol vehicle then activated its emergency equipment and conducted a traffic in the 11500 block of Bandlon Drive for the aforementioned traffic violations. Also, the officers observed that the registration on the Texas license plate CN6D213 was expired.

23. During the traffic stop, Officer Snell and "Ricky Bobby" arrived. "Ricky Bobby" alerted to the odor of narcotics inside of the vehicle. Offier Snell then recovered from the back of the vehicle the aforementioned black duffle bag, which contained: a stolen Glock 27. 40mm firearm with a loaded magazine, a Glock .357 firearm with a loaded magazine, a Heckler and Koch USP .40 mm firearm, and a Kel Tec rifle 556 with a loaded drum magazine.

24. Officer Snell observed the aforementioned black safe in the back of the vehicle and recovered 28 grams of a leafy green substance with a distinctive odor

that, based on the officers training and experience, appeared to be marijuana, 4.2 grams of pills that, based on the officers training and experience, appeared to be Methamphetamine (and which was later field tested positive as such), 1.8 grams of a powder that, based on the officers' training and experience, appeared to be cocaine (and which was later field tested positive as such), and 6.1 grams of multiple color unknown pill capsules along with a large amount of U.S Currency which LOPEZ was observed carrying to the vehicle. Officer Snell observed a Ring doorbell box next to the safe and recovered in it a combined total of $14,150 in large denominations of U.S Currency which, based on your affiant's training and experience, is consistent with narcotics activity. Officer Snell then recovered an open box that contained 10 sealed prescription bottles that has Promethazine with Codeine on the label which totaled in weight of 5,845 grams which AYALA carried to the vehicle. AYALA admitted to officers that she carried out the open box which contained 10 sealed prescription bottles that has Promethazine with Codeine on the label.

25.     Officer Snell recovered an opened black binder with seven ledgers inside on the front right passenger's floorboard within the reach of AYALA when she was a passenger.  Inside of the ledgers, officers observed narcotic prices for a cylinder of methamphetamine along with prices for different weights.  HPD Officer Wakefield also observed calculating amount of money to purchase security cameras as well as a list of people who owe money and who have already paid on specific dates.  Officer Wakefield, as well as myself, based on

training and experience, believe these monies and records are consistent with the proceeds and records of criminal activity with narcotics distributions. Namely, based on his training and experience, as well as my own, an average person does not carry a total $14,150 in U.S Currency in large denominations while being in possession of narcotics and firearms.

26. Following, and based in part on these three traffic stops, HPD obtained a search warrant of the aforementioned location. In executing the search warrant, HPD Officers recovered the following: approximately 47 kilograms of methamphetamine in a large tub in the garage which was packaged in the same manner as and consistent with the methamphetamine mentioned in paragraphs 14 and 19; 114.7 grams of heroin on the top shelf of a dining room cabinet; 39.9 kilograms (approximately 88 pounds) of marijuana in a bedroom closet; 13.7 kilograms of promethazine with codeine in a bedroom; a Masterpiece Arms Serial# V9891 Caliber 9mm firearm recovered in a large tub in the attic; a Ingram M10 45 caliber firearm recovered in a large tub in the attic; a Mossberg Maverick Serial#MV0406883 Caliber 12 gauge shotgun from a bedroom closet; a Century Arms Rifle Serial# CS2421 .308 Caliber firearm from a large tub in the attic; a Keltec Rifle SU-16 Serial# NRZ10 .556 Caliber firearm from a large tub in the attic; .a CN Romarm Serial# MK0785 .762 Caliber firearm in a large tub in the attic; a Winchester Select Field Serial#13amw05373 12-guage shotgun recovered from a large tub in the east attic; an M1 Grand Serial#1468447 .30 Caliber firearm recovered from a large tub in the attic; a Ruger 345 Serial# 664-

10290 .45 Caliber firearm in a large tub in the attic; a Keltec P38T Serial# J5359 .380 Caliber firearm an RG Industries MOD RG 26 Serial# UO76867 .25 Caliber firearm recovered from a garbage bag in the living room; a Keltec .380 caliber firearm recovered under a mattress in a bedroom; a Taurus TCP PT 738 Serial# 8831813 .380 Caliber firearm recovered from a large tub in the attic; a Springfield XD-9 Serial# XD107765 9mm Caliber firearm recovered from a large tub in the attic, a Rough Rider Revolver Serial# M30561 .22 Caliber firearm recovered from a large tub in the attic; a Glock 19 Serial# BCPC192 9 mm Caliber firearm recovered from a large tub in the attic; a Magnum Research Desert Eagle Serial# 95255052 .50 Caliber firearm recovered from a large tub in the attic; a Smith and Wesson Serial# HMP0638 9 mm Caliber firearm that records indicated was stolen from the Harris County Constables; a Springfield XD45 Serial# US799029 .45 Caliber firearm that was recovered from a bedroom dresser drawer; and a Charger Arms Serial# 1086648 .32 Caliber firearm that was recovered from a large tub in the attic.

27. Based on the above information, I believe that there is probable cause that the abovementioned individuals committed the offenses listed in their criminal complaints to which this affidavit it attached.

Respectfully submitted,

*Richard J. Walsh*
Richard J. Walsh
Special Agent
Drug Enforcement Administration

11

Sworn to telephonically on November 25, 2020 and I find probable cause on November 26, 2020.

_____
THE HONORABLE SAM S. SHELDON
UNITED STATES MAGISTRATE JUDGE
Southern District of Texas